(No. 7000.   May 19, 1942)

BIG WOOD CANAL COMPANY, a corporation, Appellant, v. UNEMPLOYMENT COMPENSATION DIVISION OF THE INDUSTRIAL ACCIDENT BOARD, Respondent.

(126 Pac. (2d) 15)

Bissell & Bird, for Appellant.

Thos. M. Robertson, Jr., Assistant Attorney General, for Respondent.

HOLDEN, J.—This proceeding is prosecuted under Section 7-5 of the Unemployment Compensation Law as amended (1941 S. L. Chap. 182, Sec. 6, pg. 409) to determine whether the Big Wood Canal Company (hereinafter called the company) is a covered employer within the meaning of the unemployment statute.

May 7, 1941, an "authorized representative" of the Industrial Accident Board determined the company was a covered employer within the meaning of the statute. June 5, 1941, the company appealed from that decision to the Board. September 23, 1941, the matter was heard on appeal by the Board. December 27, 1941, the Board found as a conclusion of law:

"That the Big Wood Canal Company is, and at all times since May 7, 1941, has been, a covered employer within the meaning of the Unemployment Compensation Law and is liable for the payment of the excise tax imposed thereby since May 7, 1941."

It was then ordered by the Board:

"That the Big Wood Canal Company, a corporation, is and since the 7th day of May has been a covered employer within the meaning of the Unemployment Compensation Law and is liable for and should pay the excise tax levied by the Unemployment Compensation Law with respect to services performed for it in connection with its business since May 7, 1941."

The appeal of the company to this court is from that order.

It is conceded by the respective parties there is no dispute as to the facts—and that the facts are identical with those in *Big Wood Canal Company v. Unemployment Compensation Division,* 61 Idaho 247, 100 Pac. (2d) 49, to which case attention is directed for the facts.

Whether the company is a covered employer within the meaning of the Unemployment Compensation Law depends upon the construction of Section 18-5, the pertinent part of which provides:

"The term 'covered employment' shall not include . . . (f) services performed in the employ of an individual owner or tenant operating a farm in connection with the cultivation of soil, the production and harvesting of crops. . . ." (1941 S. L. Chap. 182, Sec. 18-5, (f) pg. 393.)

At the outset it must be conceded "it is a recognized rule of construction, which has been followed in this state, that, in order to successfully claim an exemption from a general tax, whether property or excise, laid by the legislature, it must appear by either express terms or necessary implications, that an exemption was intended." (*Big Wood Canal Company v. Unemployment Compensation Division, supra.*)

At the time the first controversy between the company and the Board was decided by this court (case above cited), the Unemployment Compensation Law (1935 S. L. as amended by 1939 S. L. Chap. 239, Sec. 18-5) excepted or exempted, "agricultural labor." The determinative question in that case was as to whether "the labor and services performed by the Big Wood Canal Company" fell "within the exemption of 'agricultural labor,' as contemplated by the statute" (last above cited), and we held they did, and on this appeal the question is as to whether the same labor and services fall within the exception, or exemption, of the statute as amended.

To hold the legislature intended to confine the exemption to a single individual owner, or to a single tenant farmer, would render the statute highly discriminatory, arbitrary and unreasonable (hence, unconstitutional), in that it would exclude brothers, father and son, copartners, as well as any group of two or more individuals, whether incorporated or not, "operating a farm," and we

cannot attribute to the legislature such an absurdity as that. While we fully recognize and adhere to the proposition that the legislature has the power and right to make classifications for the purpose of taxation, nevertheless, this power is limited by the condition that the classification must be founded on some *reasonable difference* between the parties or conditions. Here, there is no reasonable difference between a single tenant farmer "operating a farm" and two tenant farmers operating a farm. A classification cannot rest upon mere whim and caprice, it must, as above stated, be founded on some reasonable difference.

It is true the 1941 legislature, in enacting the amendment, did not use the term "agricultural labor," found in the statute amended, but it did use this phraseology, in stating the exemption intended:

"Services performed in . . . operating a farm in connection with the cultivation of soil, the production and harvesting of crops. . . . "

Services performed in operating a farm, cultivating the soil and harvesting crops, would necessarily constitute "agricultural labor," in the broadest sense of that term.

"Where, then, as here, the language used in an amendment is as broad in its meaning as the language employed in the amended statute, no presumption could arise that a change in application was intended.

Furthermore, as to appellant, it must be kept in mind, as this court held in *Big Wood Canal Company v. Unemployment Compensation Division, supra,* that this company *"is not a profit making* corporation; it is merely a medium or instrumentality created to represent the farmers owning water rights from the reservoirs and is doing for them what each one cannot do alone for himself."

On ·the point as to whether members of an Idaho legislature know and understand that the operation of canals, ditches, flumes and laterals for the delivery of water is essential and as much a part of the production of crops as any other required "services," we quote from the *Big Wood Canal Company* case, *supra:*

" * * * it is safe to assume that the members generally

(referring to the 1939 legislature), if not unanimously, knew and understood that substantially the whole of southern Idaho is arid in its native state; and that the growing of agricultural crops in all this vast region is impossible without the artificial application of water. It is just as essential to have canals, ditches, flumes, and laterals for the delivery of water to the land, as it is to have the land in order to grow crops.

" * * * The fact, that the Big Wood Canal Co. employs and pays men who tend and maintain the reservoirs and canals, and measure and deliver the water to the farmers, renders them no less laborers in the interest and field of agriculture, since the entire maintenance and operating expense is charged up to and prorated among the various farms and tracts of land to which the water is delivered as an appurtenance."

It will be conceded the language used in the amendment is not as clear and definite as might be desired. That two constructions are possible—one which would render the statute constitutional—the other unconstitutional. In such a situation we are committed to the rule the construction should be adopted which would uphold it. (*State v. Peterson,* 61 Idaho 50, 56, 97 Pac. (2d) 603; *City of Idaho Falls v. Pfost,* 53 Idaho 247, 251, 23 Pac. (2d) 245.)

It follows from what has been said, that the order appealed from must be reversed and the cause remanded and it is so ordered, with directions to the Board to make appropriate findings and enter an order thereon in harmony with the views above expressed. Costs awarded to appellant.

Givens, C. J., and Budge and Ailshie, JJ., concur.

Morgan, J., sat at the hearing but deeming himself to be disqualified, did not participate in the decision.